May it please the Court, my name is Alan Braybender on behalf of the United States of America. If I may, I'd like to reserve five minutes for rebuttal. The United States appeals from an order of the Honorable Judge John Thunheim of the District of Minnesota dismissing the federal Lacey Act charges against the defendants for unlawfully transporting and selling game fish, mostly walleye, taken from lakes within the Leech Lake Indian Reservation in northern Minnesota in violation of the laws of the Leech Lake Band of Chippewa Indians. The District Court dismissed the indictments on the mistaken basis that the defendants had individual treaty rights to take and sell the fish. The District Court's dismissal portrays a deep misunderstanding of the basis and nature of the rights at issue as well as a fundamental misunderstanding of the Lacey Act. By way of background, the Lacey Act is an anti-trafficking statute that prohibits the introduction of contraband fish or wildlife or plants into the stream of commerce. The prohibited acts in the Lacey Act are the import, export, transport, sale, purchase, receipt of contraband fish or wildlife within the jurisdiction of the United States of America. The Lacey Act defines contraband by reference to the law of the nation, state, or tribe where the fish or wildlife was originally taken or possessed. In other words, if fish or wildlife is taken or possessed in violation of the law of its place of origin, then the Lacey Act prohibits that fish or wildlife from being imported, exported, transported, sold, purchased within the United States of America. What role do treaty rights play in that scheme? Well, if the defendants had a treaty right to take fish, then the fish would not be contraband and there would not be a Lacey Act violation to transact in that particular fish. These defendants, however, did not have a treaty right to take the fish that they took. The treaty rights at issue did not belong to these particular defendants. The treaty rights at issue are tribal rights. They belong to the tribal community as a whole. And because they are collective rights, they are subject to limitation and regulation. But what says that it's only tribal rights? The language doesn't say that. Pardon me, Your Honor. Your Honor, the rights at issue arise from the setting aside the Leech Lake Indian Reservation for the sovereign Leech Lake Band. And because they are sovereign rights, they are subject to regulation by the sovereign. They are not individual rights. And here the Leech Lake Band, through its elective government, has established regulations which allow its members to take fish by gill net for subsistence purposes, for personal uses. But in order to preserve the resource for subsistence purposes, the band prohibits its members from using gill nets for commercial purposes. And that is what the defendants are accused of doing here, taking fish by gill net for commercial purposes in violation of the laws of the Leech Lake Band. So shouldn't it be up to the band to enforce the law? Well, the band certainly has the right to enforce the tribal laws. But what the Lacey Act does is it's an anti-trafficking statute. So if fish or wildlife is taken in violation of a law of a foreign state, of an American state, or a tribe, what the Lacey Act does is prohibit that fish or wildlife from being introduced into the United States marketplace. It's a separate crime. You say that the rights belong to the tribe, the sovereign. Right. Then how does the United States get the authority to go after an offender instead of the tribe? The defendants committed multiple crimes in this case. They violated tribal law by taking fish by gill net for commercial purposes. But the defendants committed a separate crime by then transporting that fish off the Leech Lake Indian Reservation and selling that fish on the black market throughout Minnesota within the jurisdiction of the United States. That's a separate federal crime. That's not a violation of tribal law. That is a federal crime, and it is abolished in the Lacey Act. That's pled in the indictment that they sold off reservation. I don't know if it's specifically pled in the indictment, but that is what we would prove at trial, yes. They took the fish off the reservation, and they sold it throughout Minnesota, mostly to non-Indian buyers. Would it be a different situation if they sold it, if all of the fish were sold on reservation? I don't think it would legally make a difference. Factually, of course, that's a fact that is, I think, beneficial to the government in this case. But it would still be a sale within the jurisdiction of the United States, and it would still be a violation of the Lacey Act. But in this case, the defendants did take the fish off the Leech Lake Indian Reservation and sold it on the black market throughout Minnesota, mostly northern Minnesota, and mostly to non-Indian buyers. Your position is that the treaty rights pertain only to the tribe and not to individuals? Right. The right belongs to the sovereign Leech Lake Band. It belongs to the community as a whole. That's not to say that individual members of the tribe cannot assert the right in court proceedings. They certainly may. But the right that they may assert is one of an individual of the community. It's part of a tribal right to hunt and to fish. And because the Leech Lake Band here has defined the tribal fishing right to exclude taking fish for commercial purposes by gill net, the defendants do not have the rights that they claim to have. The tribe, as holder of the right, has limited the tribal members' exercise of the right to exclude the defendant's conduct. Now, one place where the district court veered off track is its mistaken application of a United States v. Dion type abrogation analysis to the Lacey Act. The Lacey Act does not abrogate tribal rights. The Lacey Act plainly states in its text it doesn't diminish tribal rights. What the Lacey Act does is supplement tribal fishing rights by providing an additional enforcement mechanism for conduct that the tribe's regulation, the band's regulations, already prohibit. The Lacey Act supports tribal laws and conserves tribal resources by providing federal penalties to those who attempt to access U.S. commercial markets in order to profit from the unlawful taking of fish or wildlife. Excuse me, did the department appear before the magistrate and Judge Thunheim and or Judge Thunheim? Department of Interior. Isn't that where you're from? No, I'm from the Department of Justice, Your Honor. The Department of Justice did appear before the magistrate and Judge Thunheim, yes. So the Lacey Act, by way of background, protects, supports the web of federal, state, and tribal laws that protect wildlife. In particular, it's easy to understand how that works here. Poachers do not generally respect territorial boundaries, whether they are international borders or the borders of an Indian reservation. Poachers will attempt to sell their illicit products wherever buyers for those products may be found. By making it a federal criminal offense to import, export, transport, sell, or purchase unlawful fish or wildlife within the jurisdiction of the United States, the Lacey Act has supported American states in their protection of wildlife since 1900 and has long assisted foreign nations as well. In 1981, Congress added violations of Indian tribal law as a potential predicate offense for a subsequent Lacey Act violation in recognition of the resource management responsibilities of Indian tribes. And in doing so, it placed tribal laws and tribal resources on equal footing with the laws and natural resources of the state and foreign governments that the Lacey Act had long supported. So, the Lacey Act supports tribal rights and conserves tribal resources by helping to ensure that fish remain in reservation lakes so that the tribe's exercise of its exclusive authority has some real meaning. Yeah, I wonder if it's support. I mean, here the federal penalties are, it's almost like a sledgehammer, really. Because the federal, potential federal penalties, I think, are ten times what the tribal penalties are. But there are different offenses, again. The tribe's laws govern the methods of fishing, who may fish and by what method. That is not what the Lacey Act is. The Lacey Act is, again, an anti-trafficking statute. The penalties are more serious because dealing commercially in contraband fish and wildlife is a serious offense. And it cannot be handled at the state or tribal level. It needs to be handled at the federal level. The defendants are facing federal indictment while others are facing state charges because these are the most culpable. They are the ones that are responsible for the resource damage. They are the ones trafficking and the unlawful taking of fish and wildlife. Now, despite what the defendants might have this court believe, the dispute is not about the rights held by the Leech Lake Band. The United States agrees that the Leech Lake Band has fishing rights on its reservation. The United States agrees that the Leech Lake Band has the exclusive right to regulate fishing on the reservation, exclusive of that of the state of Minnesota. But the fact that the band has these rights does not give these defendants the right to violate the law. The defendants don't have any right to take fish in violation of the laws of the Leech Lake Band. And they don't have the right to then transport that fish off the reservation and sell that fish on the black market within the jurisdiction of the United States. The fact that the Leech Lake Band has an exclusive right to regulate fishing does not provide any assistance to these defendants. Even given the exclusivity of the band's rights, which again the United States doesn't dispute, where the band itself has limited the right to preclude the defendant's conduct, there's no conflict between the Lacey Act and the band's rights. Just because these defendants are facing criminal penalties doesn't mean the band's rights have been diminished in any way. By prosecuting the defendants for unlawfully transporting and selling contraband fish within the jurisdiction of the United States, the United States is not regulating fishing on the Leech Lake Reservation. Has the band tried to regulate this activity? I'm not talking about the individuals here. Well, the band has, yes, has regulated by prohibiting commercial fishing by gill net. The band's regulations are clear. And the band still retains the ability to prosecute for that violation. But then when the defendants took the fish that was taken unlawfully on the reservation, took the fish off the reservation, and then sold that fish on the black market within the jurisdiction of the United States, that was a separate federal offense. And the United States most definitely has an interest in halting the black market sale of contraband within its jurisdiction. Whether the contraband is drugs, stolen televisions, or unlawfully taken fish or wildlife, the defendant's position that they have a legal right to sell contraband in the United States is highly counterintuitive. It is legally erroneous for the reasons stated in our briefs and here today. The district court erred in accepting the defendant's position and in disobeying it. Dismissing the indictments over the considered recommendations of the magistrate judge here and of Judge Kyle in a related case. The district court should be reversed, the indictments should be reinstated, and these cases should be remanded for trial. Did Judge Kyle came to the opposite conclusion? Judge Kyle did come to the opposite conclusion. Just out of curiosity, what's a gill net? I don't know if I can, it's a net that's used to catch fish. I don't know if I can provide any more detail than that. Well, it catches a certain part of the fish, doesn't it? Probably the gill. Yeah, that's what I would guess. That would have been my guess, but. Unless the court has any other questions, I reserve the remainder of my time for rebuttal. Okay, Mr. Ng. It please the court, Paul Ng on behalf of the Chippewa Indian defendants. This court and many other courts have been down this road before. These issues have been litigated by reasoned counsel for decades, and a compromise has been arranged by the United States and the tribe as to how to enforce Indian tribal rights by individual Indians, and it's certainly not a prosecution under the Lacey Act. The Minnesota Supreme Court determined in 1944 that Native American Indians have a treaty right under the 1837 treaty to hunt and fish and sell fish and use nets to sell fish. Judge Devitt in 1971 in the Herbst decision. Do they have a right to do that in a way that's been prohibited by the ban? I think the analysis that my brother lawyer uses is wrong. You have to start as, do they have a right to do this under the treaties? Is it an individual right? And then the analysis is, does the tribe have an exclusive right to regulate the hunting and fishing? And then finally, the remedy for a violation of tribal rights is not the Lacey Act. Those are the four steps of analysis that Judge Thunheim used and are correct. So what I would suggest the court do is start with, do they have an Indian right under the 1837 treaty to hunt and fish and net and sell commercially? And we don't have to guess about that, because you, Judge Murphy, wrote a 100-page decision in 1994 that is considered the landmark in Minnesota, which was eventually affirmed by the United States Supreme Court, as you well know, where you hold that the right under the treaty is to sell fish and net fish and sell it commercially. So as a predicate for the whole case here, these four individuals had a right to do it under the treaty. The second question, then, is did they have an individual right or is it the tribal right? That's been decided in their favor, too. We disagree completely with our colleague here. In Dion, United States v. Dion, footnote 4, the Supreme Court discussed the very issue and said that right under these treaties is an individual right of the Indian himself and a tribal right, so it's joined together. And Dion cited the famous case out of 1904, which is Winans, which was also cited by Judge Devitt and also cited by the Minnesota Supreme Court, where they have a particular sentence settling the dispute, and it's at page 381. And the high court said this, they reserve rights, however, to every individual Indian as though named in the treaty. But it doesn't say to fish in any way you want. And the band has prohibited this kind of fishing. All right, so now we come to why they can't prosecute the case. After the Devitt decision, Judge Devitt decision in the Herbst decision, this tribal code was enacted. It was drafted in response to a federal settlement called the Herbst Accord or the Herbst Consent Agreements in our appendix. And this agreement was drafted in part by Judge Renner, who was then the United States attorney, who took the position that the Indians had exclusive right over Leech Lake. And in the agreement, they said we have to have some mechanism to enforce this so that the conservation principles that we all have, we don't want to fish out lakes, we have to have some kind of method to say that if an individual Indian violates or nets too much fish, we have to have some kind of penalty. And so this agreement is ingenious, because not only it sets up the tribal code, which is at issue here, but it sets up enforcement provisions. And the kicker for the state is that if they find, the Minnesota finds, that the Indians are abusing their natural resource, they cut the funding out of the agreement. And to this day, Minnesota pays the Leech Lake tribe $2.5 million a year on fishing licenses that are issued for people who want to fish on Lake Winnie and Leech Lake. And according to the Herbst Agreement, which again is in our appendix, if there's a violation of the fishing tribal code and the state is upset about it, they withhold the funds. And as a practical matter, they've never done that, because there's no overfishing in Leech Lake. There's a footnote in their brief about Red Lake, but that's an entirely different problem. That's a closed reservation. They didn't manage it well, but Leech Lake manages its fishing. And so does Lake Mille Lacs. Now, so why wouldn't the federal government's ability to protect its citizens from contraband, whatever the source, authorize the Lacy Act prosecution? Because they promised not to. In this Herbst Agreement, they promised through the United States, in a signature of the United States Attorney, they promised that the Leech Lake Indian Tribal Court has exclusive jurisdiction over Leech Lake Indians. It is a promise by the government that they want to breach now by trying to put these poor guys I wish we could bring them here so you could see them, these poor guys who are at the end of their lives trying to fish a few walleyes for themselves into prison. But we have an agreement in this case not to do this. I mean, you could take the same position that they're taking here every day in Mille Lacs Lake where there is netting, under an agreement by the government, where Mille Lacs Lake Indians, the Chippewa Indians there, routinely net thousands and thousands of pounds. And under the government's theory, even though there's agreement that they can do this, they're still violating the Lacy Act because they still sell the fish all over Minnesota on a commercial basis. So what they're doing is fundamentally wrong. What they're doing is what they promised not to do. So the argument seems to be, well, it's not about taking the fish, it's about selling the fish. I mean, the predicate of the offense is something that's protected, at least under a treaty right, and is in the exclusive jurisdiction of the tribal court. The thrust of the government here is that, well, Leech Lake Tribal Court, you need our help. We want to come in and help you enforce the laws. We've agreed already that you can do that, that they're exclusive to you. So we're going to indict people because you can't do this by yourself. There's an inherent condescension in the prosecution in this case. That happens all the time. I mean, the gun offenses are typically state offenses, too, and the federal government ends up prosecuting those all the time. People like it, but it happens. Yeah, but that's a different animal altogether. I mean, the possession of felon and possession of firearms, you've already reached that decision. But this is a fishing, this is a way of living that is historic that has nothing to do with a firearm, because they didn't have that kind of firearms back in 1837 anyway. The analysis used by So Happy, which seems to be their case that they're relying on, is a Ninth Circuit case. It was decided a year before Dion was decided. Dion's a Supreme Court case, which gives you the method of analysis. So Happy has a different kind of treaty. Right, and so if we've learned anything from the Mille Lacs litigation, we've learned from Justice O'Connor that each treaty is evaluated on its own. So you have to look at the Mille Lacs Treaty and the Leech Lake Treaty of 1855, which established the reservation, exclusive of the So Happy Treaty, but the analysis is wrong, too. The other two cases that they use, or they assert, that are persuasive here, if I may distinguish them, because I can't get back up. One is Stone. That was a moose hunting case with an airplane. Mr. Richman and I litigated that all these years ago, but it had nothing to do with the Lacey Act. It was these guys steering a moose in a Cessna in Detroit Lakes. And so the pilot was not an Indian, and there was nothing in a treaty right that would permit, or even anticipate using a Cessna swooping down over a moose in one of these lakes off Highway 10. So that had nothing to do with the Lacey Act. The second case that they use is Big Eagle. That was an Eighth Circuit case, too, but that was a different treaty by a defendant who raised the Lacey Act, or the similar defenses, who had no treaty right. He crossed the river when he shouldn't have and went fishing, but he had no treaty right like these individuals do. So where does the treaty give an individual a right to take fish in violation of tribal law and sell it? Well, the treaty doesn't do that. In our view, it gives the individual a right of commercial fishing, but it also gives the tribe, by inference here, and by agreement with the government, to moderate and control their fishing. So the individual has the right, subject to the tribal control. I mean, there's got to be some kind of control here, and some kind of agreement on how to moderate the resources of Minnesota, and we've reached these agreements. And so that's how the dynamic was in 1971. How do we make sure we don't come to court like this? How do we make sure that someone who errs and fishes when they shouldn't gets disciplined, but still preserves their tribal integrity? And that's what we... No, and I submit to you that the only person, the only entity that can find a tribal violation should be the tribe. I mean, they're the experts of tribal law. They have defenses if they wish to be prosecuted there. The anomalous thing about this whole square-hook prosecution is that many people are prosecuted in the tribal court. And to get back to your question, Judge Grunder, they're getting $50 fines, or $100 fines. Specifically, where can we find what you were suggesting was a promise by the federal government not to prosecute these kinds of violations? Well, it's in our appendix. It's called the... 14A, 19A, and the signature page is by Judge Renner. The interesting thing about this agreement is that... That was when he was U.S. Attorney, right? Right. The interesting thing about this agreement is that the parties figured out that if there is a dispute about fishing rights on Leech Lake, and the Minnesota and the federal folks can't agree, there's an arbitration clause, just like there is in real estate and everything else, so that the parties agreed to arbitrate fishing violations, or arbitrate any issues that can't be resolved in the ordinary course of tribal court. So it was ingenious. It was a fantastic agreement. Does that agreement predate the Lacey Act? Yes, it does, but it also has great language in here. They were prescient. The fellow who drafted this was magistrate now, then magistrate, well, he became a magistrate, Bernie Becker, and he was the expert in Indian law for many years here. And there's a provision in this agreement that says it's a final, long-standing agreement, unless overruled by the Supreme Court. And it's never been overruled. So that's what's happening in Leech Lake and has been happening for 40 years. And one can't go fishing in Leech Lake without somehow referring to the Herbst Agreement and understanding why this compromise was made. So that's what's wrong with the opinion. Judge Thunheim was absolutely right. There was a right to fish and hunt. It's never been abrogated. It's a tribal court issue by agreement with the United States. And had we tried the case, by the way, we went through all these files from 40 years ago, and we were going to introduce every United States attorney's signature that permitted hunting and fishing and sale of fish on Leech Lake as an admission of a party opponent. I might add one more thing, and then I'll rest. The United States has taken not only a different position in the Herbst Accord, 1971, they took a different position in Leech Lake. They sided with the tribe. They intervened on behalf of the tribe to assert that these tribal rights to commercially fish and sell fish were upheld. And so we have this whole governmental flip-flop, if you will. And I don't mean to be denigrating, use the word. They have flip-flopped, though, between what their positions were in 71 and 94, 97, and even in the Supreme Court, and what their position is today. And it is deeply disturbing to the tribe and these four defendants. If you have any other questions, I've said my piece. I appreciate you hearing me out. You've got seven minutes. Thank you. As I understand, Counsel, his entire case now rests on the Herbst Agreement. I urge the Court, if it has not already, to read the Herbst Agreement. It does not say what the defendants say it says. Nowhere in the Herbst Agreement did the United States promise not to bring Lasiak charges against defendants who take fish unlawfully in violation of tribal law and then transport that fish. There was no Lasiak, so it would have happened. No, there most certainly was. The Lasiak is from 1900. The Herbst Agreement was, I think, in the 80s at some point. What the Herbst Agreement does is state the relationship between tribal law and state law, and how the tribal law and state law shall be applied against tribal members and non-tribal members. It doesn't discuss the role of the federal government or federal law at all. Again, I would urge the Court to go back and read the Herbst Agreement. It in no way supports what the defendants claimed argument. And that, as I understand it, is their entire case. Well, how would the U.S. attorney have authority to bind a state as to an agreement like that? Well, the Herbst Agreement settled the Herbst litigation, and there was two different cases. There was the Leech Lake Band versus the state of Minnesota, where the state of Minnesota was trying to regulate fishing on the Leech Lake Reservation. The Leech Lake Band said, no, we have the exclusive right. The United States filed a separate case on behalf of the Leech Lake Band against the state of Minnesota, saying, state of Minnesota, the Leech Lake Band has the exclusive right to regulate fishing on its reservation. You do not. The Herbst Agreement was a resolution of that dispute. Now, again, the United States agrees, as it has always agreed, that the Leech Lake Band has the exclusive right to regulate fishing on its reservation. But even given the exclusivity of the band's rights, the fact that the band has limited its members' fishing rights by not allowing them to use gill nets for commercial purposes, because of that, there's no conflict between the Lacey Act and the band's rights. Again, just because these defendants are facing criminal penalties doesn't mean the band's rights have been affected. Where the United States is prosecuting the defendants for transporting and selling contraband fish, there is no conflict with the Lacey Act. The United States is supporting its own or vindicating its own sovereign interest in halting the black market sale of contraband. Did federal agents hear that this was going on, and then they went to investigate? Yes. Actually, it was initiated by, I believe, the state of Minnesota, the Minnesota DNR. And this was a widespread activity throughout northern Minnesota. The Department of Natural Resources was receiving a multitude of complaints from both tribal members and non-tribal members about the unlawful sale and the unlawful netting of game fish and walleye on lakes in northern Minnesota. So it was initiated by the state DNR. Later, the U.S. Fish and Wildlife Service joined the investigation. And also, by the way, before the United States indicted these individuals, the Leech Lake Band was brought in and informed of the prosecutions, potential prosecutions. With regard to counsel's claims regarding Mille Lacs, the fishing rights on Mille Lacs arise out of a different source, the 1837 Treaty. The rights here do not arise out of the 1837 Treaty. The rights here arise out of the setting aside of the Leech Lake Indian Reservation for the exclusive use of the sovereign Leech Lake Band. Just as any sovereign has the right to control resources within its borders, so too does the Leech Lake Band. It's a sovereign right that belongs to the Leech Lake Band, and as a sovereign, the Leech Lake Band can regulate and limit its members' use of the fishing rights. The Mille Lacs Treaty and what's happening in Mille Lacs is in no way relevant here. And unless the Court has any additional questions for me. Okay, thank you. Thank you, both.